UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

HOUSEMAN CONSTRUCTION
COMPANY

        Plaintiff,

v.                                               Case No. 1:08-CV-719

THE CINCINNATI CASUALTY          HON. GORDON J. QUIST
COMPANY

        Defendant.
_____/

## **OPINION**

Houseman Construction Company (Houseman) filed this action against the Cincinnati Casualty Company (Cincinnati) on July 30, 2008. Houseman was the general contractor for the construction of a grocery store. Cincinnati provided Houseman a commercial general liability (CGL) insurance policy (Policy). Several years after the store was completed, structural defects became apparent when the floor began to sink. Houseman's client sued Houseman in a separate action in state court. Houseman claims that Cincinnati has a duty to indemnify and defend it and requests a declaratory judgment that its client's claim stems from an occurrence covered by Houseman's policy with Cincinnati. Cincinnati has filed two motions for summary judgment. The first (docket no. 14) argues that Houseman's client's claim is not an occurrence as defined by Michigan law. The second (docket no. 20) argues that even if it is an occurrence, one or more exclusions preclude coverage. Cincinnati's motions are denied for the following reasons.

# I. Analysis

## A. Meaning of "Occurrence" in the Policy

The facts, applicable law, and summary judgment standard are well-known to the parties and the Court, and need not be recited here. The primary issue is whether damage due to a general contractor's deficient or nonconforming performance is an occurrence as defined by the Policy and construed by Michigan law when the damage is confined to the general contractor's work product. The Policy defines an "occurrence" in part as an "accident." Courts construing the definition of "occurrence" in CGL policies have developed two competing constructions. The majority of courts construing "occurrence" in a CGL policy have held that damage confined to the contractor's work product and due to nonconforming performance is not an occurrence. These courts have reasoned that such damage was not the result of an "accident" because the damage flowed naturally from the deficient workmanship, and was thus neither unexpected nor fortuitous. These courts have also stated that CGL policies are intended to indemnify the contractor against claims for personal injury or damage to other property arising from nonconforming performance.

The alternative position is that damage confined to the contractor's work product and due to nonconforming performance is an occurrence. Courts taking this position have reasoned that although the damage may have been a natural consequence of the deficient workmanship, it was still unexpected and unintended because the contractor intended to perform adequately, and as a result, never expected any harm to occur.

The Michigan Court of Appeals adopted the former position in *Hawkeye-Security Insurance Co. v. Vector Construction Co.*, 460 N.W.2d 329, 185 Mich. App. 369 (1990), and has

affirmed this position in several subsequent cases. In *Vector*, the defendant installed a concrete roof on a building. After installation, tests revealed that the concrete did not meet the project's specifications. The concrete itself was supplied by another firm. The defendant was required to replace the roof and sought indemnity from its CGL insurance provider. The definition of "occurrence" in *Vector* was "an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Vector*, 460 N.W.2d at 332, 185 Mich. App. at 373. "Accident" was undefined in the policy, as it is in this case. The court of appeals had previously adopted in a similar context the definition of "accident" that the Michigan Supreme Court borrowed from Couch:

> "Anything that begins to be, that happens, or that is a result which is not anticipated and is unforeseen and unexpected by the person injured or affected thereby – that is, takes place without the insured's foresight or expectation and without design or intentional causation on his part. In other words, an accident is an undesigned contingency, a casualty, a happening by chance, something out of the usual course of things, unusual, fortuitous, not anticipated, and not naturally to be expected."

*Frankenmuth Mut. Ins. Co. v. Kompus*, 354 N.W.2d 303, 309, 135 Mich. App. 667, 678 (1984) (quoting *Guerdon Indus., Inc. v. Fidelity & Cas. Co. of N.Y.*, 123 N.W.2d 143, 147, 371 Mich. 12, 18-19 (1963) (internal quotation omitted)).

The *Vector* court discussed a New Hampshire case, *McAlister v. Peerless Insurance Co.*, 474 A.2d 1033, 124 N.H. 676 (1984), construing a substantially identical definition of "occurrence." *Vector*, 460 N.W.2d at 333-34, 185 Mich. App. at 377. The *Vector* court agreed with *McAlister's* conclusion that:

> The fortuity implied by reference to accident or exposure is not what is commonly meant by a failure of workmanship.... Despite proper deference, then, to the reasonable expectations of the

> policyholder, ... we are unable to find in the quoted policy language a reasonable basis to expect coverage for defective workmanship.

*Id*. at 334, 185 Mich. App. at 378 (quoting *McAlister*, 474 A.2d at 1036, 124 N.H. at 680). It thus held that the defendant's "defective workmanship … standing alone, was not the result of an occurrence within the meaning of the insurance contract." *Vector*, 460 N.W.2d. at 334, 185 Mich. App. at 378

*Vector's* holding was reaffirmed in *Radenbaugh v. Farm Bureau General Insurance Co.*, 610 N.W.2d 272, 240 Mich. App. 134 (2000). *Radenbaugh* discussed *Vector* and compared it to *Bundy Tubing Co. v. Royal Indemnity Co.*, 298 F.2d 151 (6th Cir. 1962). The *Bundy* court held that a manufacturing defect in steel pipes which caused them to leak, damaging other portions of the building, was an occurrence within the meaning of a CGL insurance policy. *Radenbaugh* noted that *Bundy* and *Vector* were not inconsistent:

> The holdings in *Bundy* and *Vector* can be reconciled by focusing on the property damage at issue in each case. In *Vector*, the insured's defective workmanship resulted only in damage to the insured's work product. In *Bundy*, the insured's defective workmanship resulted in damage to the property of others. Taken together, these cases stand for the proposition that when an insured's defective workmanship results in damage to the property of others, an "accident" exists within the meaning of the standard comprehensive liability policy. This construction is supported by the definition of "accident" adopted by the Michigan Supreme Court … [in *Guerdon*].

*Radenbaugh*, 610 N.W.2d at 279-80, 240 Mich. App. at 147. *Radenbaugh* thus held that damage to other property caused by a mobile-home manufacturer's faulty instructions for securing the home to a foundation was an occurrence within the meaning of the insurance policy.

The Court recognizes the validity of *Vector*. However, the instant case differs from *Vector* in an important aspect. The policy in *Vector* contained an exclusion that is relevant to the

construction of "occurrence" in this case. Excluded from coverage was "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith." *Vector*, 460 N.W.2d at 336, 185 Mich. App. at 383. This "your work" exclusion is broader than a similar exclusion in the Policy. The Policy's "your work" exclusion "does not apply if the *damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor*." (Docket no. 14-5 at 17 (emphasis added).)

*Radenbaugh* considered an exclusion specifying that "[t]his insurance does not apply to '[p]roperty damage' to 'your product' arising out of it or any part of it." The *Radenbaugh* court determined that "this exclusion relieves [the insurance company] of liability [for] the costs of repairing the structure …. It does not, however, relieve [the insurance company] of liability for [costs] … related to property damage to property other than to the structure itself." *Radenbaugh*, 610 N.W.2d at 281, 240 Mich. App. at 150. The Policy has a "your product" exclusion, but it is inapplicable because the Policy defines "your product" to exclude real property. The Policy's "your work" exclusion is similar, although "your work" does not exclude real property. However, in contrast with the exclusions in the policies in *Vector* and *Radenbaugh* as well as the Policy's "your product" exclusion, the Policy's "your work" exclusion expressly excepts from the exclusion damage to the contractor's work product performed by or caused by the work of a subcontractor. This exception suggests that the Policy intended to cover at least some instances of damage to the contractor's work caused by a subcontractor's poor workmanship. In the Court's judgment, the subcontractor exception to the "your work" exclusion creates ambiguity regarding whether damage, caused by a subcontractor's deficient workmanship and confined to the contractor's work product, constitutes an "occurrence" within the meaning of the Policy.

5

This ambiguity must be resolved in favor of the insured. Accordingly, the Court holds that there has been an occurrence within the meaning of the Policy.

### B. Exclusions

Cincinnati argues that even if there was an occurrence within the Policy's meaning, coverage is precluded by one or more exclusions. The first exclusion which purportedly absolves Cincinnati of liability is the "contractual liability" exclusion. This exclusion is inapplicable. It excludes damages arising "by reason of the assumption of liability in a contract." Houseman's liability arises from an alleged breach of contract, not its assumption of liability in a contract.

The second exclusion Cincinnati relies upon is the "your product" exclusion. "Your product" is defined as "any goods or products, other than real property …." This definition expressly excludes real property. Real property includes both the land and fixtures. The grocery store Houseman erected is thus excluded from the definition of "your product" as real property.

Cincinnati also argues coverage is precluded by the "your work" exclusion. However, this exclusion does not apply "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Houseman has submitted exhibits supporting its contention that this work was performed by a variety of subcontractors. At the least, whether the work was performed by subcontractors, rendering the "your work" exclusion inapplicable, is a question of fact for the jury.

The final exclusion Cincinnati argues is the "impaired property" exclusion. This excludes "'[p]roperty damage' to 'impaired property' or property that has not been physically injured," arising from specified causes. The grocery store is not "impaired property," because that definition expressly excludes "your property" and "your work." The entire grocery store is

"your work." The remainder of the exclusion excludes "'property damage' to … property that has not been physically injured …." The grocery store was physically injured when the floor sank. Thus, the grocery store is not "property that has not been physically injured," and this exclusion is inapplicable. Furthermore, "property damage" includes only two types of damage: physical injury (including any resulting loss of use), and loss of use of property that is not physically injured. Thus, even if portions of the grocery store are regarded as not physically injured, the only remaining "property damage" that could be excluded by the "impaired property" exclusion would be loss of use of that portion of the property that was not physically injured. However, Cincinnati has not suggested that there has been any loss of use. (Docket no. 21 at 7.) Thus, this exclusion is inapplicable even if some of the property was not physically injured.

## II. Conclusion

For the aforementioned reasons, the Court holds that there was an "occurrence" within the meaning of the Policy and as construed by Michigan law when the floor of the structure erected by Houseman sank as a result of alleged construction defects in work performed by subcontractors on Houseman's behalf. Furthermore, the exclusions cited by Cincinnati do not preclude coverage in this case. A separate Order consistent with this Opinion will be entered.


Dated: July 14, 2009                                /s/ Gordon J. Quist
                                                  GORDON J. QUIST
                                              UNITED STATES DISTRICT JUDGE