UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

HOUSEMAN CONSTRUCTION
COMPANY,

        Plaintiff,                                Case No. 1:08-CV-719

v.                                                HON. GORDON J. QUIST

THE CINCINNATI INSURANCE
COMPANY

        Defendant.

_____/

## **OPINION**

        Cincinnati Insurance Company ("Cincinnati") has filed its third motion for summary judgment and Houseman Construction Company ("Houseman") has filed a cross motion for summary judgment. The Court held oral arguments on March 24, 2010, to address these motions and whether there was an "occurrence" in light of *Cincinnati Insurance Co. v. Beazer Homes Investments, LLC*, 594 F.3d 441 (6th Cir. 2010). For the reasons set forth below, both motions will be denied and the Court will vacate in part its prior Order interpreting "occurrence."

        The facts were set forth in this Court's July 14, 2009, Opinion and will be summarized here. Houseman was the general contractor for the construction of a grocery store. Several years after the store was completed, structural defects became apparent when the store's floor began to sink. The owner of the grocery store sued Houseman in a separate state court action.[1] This case concerns whether Houseman has coverage for the store's claim under a commercial general liability ("CGL")

---

[1] The state court action concluded before Cincinnati filed its first motion for summary judgment in this Court. (Def.'s First Mot. For Summ. J., docket no. 15, at 1-2.)

insurance policy ("Policy") issued by Cincinnati. Houseman requests a declaratory judgment that the grocery store's claim arises from an occurrence covered by the Policy.

The applicable law and summary judgment standard are well-known to the parties and the Court, and need not be repeated here. In its motion for summary judgment, Cincinnati argues that there was not an occurrence to trigger coverage because either (1) there was not "property damage" as a matter of law, or (2) there was not an "accident." The specific "property damage" language at issue is "[p]hysical injury to tangible property, including all resulting loss of use of that property." "Accident" is not defined in the Policy.

**Property Damage and Occurrence: The Store's Floor**[2]

**1. Cincinnati's Property Damage Argument**

The parties agree that in the separate state court action, the grocery store sought damages from Houseman valued at the cost of repairing or replacing the floor. Cincinnati argues that there was not an occurrence to trigger coverage because the sinking floor is not "property damage" as a matter of law. Cincinnati cites cases from Indiana and Illinois for the proposition that repair and replacement costs are economic losses, and not property damage. Cincinnati concedes that there are no Michigan cases addressing this issue. Houseman claims that the Indiana and Illinois cases are not relevant because the policy language and the facts are different from the present case. Houseman also contends that the grocery store's case was a negligence action pled as a breach of contract claim.

In Michigan, "insurance policies are subject to the same contract construction principles that apply to any other species of contract." *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 461, 703 N.W.2d

---

[2] Application of the *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp., 746 F.2d 323 (6th Cir. 1984),* factors to the particular circumstances of this case indicate that the exercise of declaratory judgment jurisdiction is appropriate.

23, 26 (2005). Insurance policies must be read as a whole to determine and effectuate the parties' intent. *See McKusick v. Travelers Indem. Co.*, 246 Mich. App. 329, 332, 632 N.W.2d 525, 528 (2001). Finally, "a court must construe and apply unambiguous contract provisions as written." *Rory*, 473 Mich. at 461, 703 N.W.2d at 26. "[T]he judiciary is without authority to modify unambiguous contracts or rebalance the contractual equities struck by the contracting parties." *Id.*

The Policy defines "property damage" as both "[p]hysical injury to tangible property, including all resulting loss of use of that property," and alternatively as "[l]oss of use of tangible property that is not physically injured." The "physical injury to tangible property" definition of "property damage" is the most apropos.

The Court finds that there is "property damage" under the Policy. In the underlying state court action, the grocery store alleged that its floor (tangible property) sank (physical injury). When the grocery store alleged that its floor sank, the store was alleging physical injury **to** tangible property, which is "property damage" under the Policy. *See* 3 Allan D. Windt, *Insurance Claims and Disputes* § 11:1 (5th ed. 2007 & Supp. 2010) (stating that "[i]f the insured's work physically deteriorates in some way, the work has suffered 'property damage.' Whether or not that damage is covered should depend upon whether the damage was caused by an occurrence and whether such damage is excluded from coverage."). This quote is consistent with the way in which Michigan courts have addressed this question. *See, e.g., Ahrens Constr., Inc. v. Amerisure Ins. Co.*, No. 288272, 2010 WL 446543 (Mich. Ct. App. Feb. 9, 2010); *Amerisure Mutual Ins. Co. v. Hall Steel Co.*, No. 286677, 2009 WL 4724303 (Mich. Ct. App. Dec. 10, 2009); *Hometowne Bldg. Co. v. Amerisure Mutual Ins. Co.*, No. 287336, 2009 WL 3276509 (Mich. Ct. App. Oct. 13, 2009); *Liparoto Constr., Inc. v. Gen. Shale Brick, Inc.*, 284 Mich. App. 25, 772 N.W.2d 801 (2009). Finally, the fact that the grocery store brought the underlying action in contract does not alter this analysis because the Policy provides coverage for claims, not causes of action.

## 2. Cincinnati's Accident Argument and the Meaning of "Occurrence"

Cincinnati also argues that there was not an occurrence to trigger coverage because there was not an "accident." "Accident" is not defined in the Policy. Cincinnati cites *Lenning v. Commercial Union Insurance Company*, 260 F.3d 574 (6th Cir. 2001), for the proposition that where the underlying complaint alleges a breach of contract claim, there is no occurrence to trigger coverage because a breach of contract is not an accident. Houseman argues that *Lenning* can be distinguished from the facts of this case and that Cincinnati's accident argument is a reincarnation of the "your work" argument addressed in this Court's prior Order.

The Court finds that *Lenning* does not apply here. First, the plaintiff in the underlying action in *Lenning* filed suit for incomplete work, not faulty work. *Lenning*, 260 F.3d at 581-82. More importantly, the policy at issue in *Lenning* was a custom homeowner's insurance policy, not a standard CGL policy. *Id.* at 578. Indeed, the Sixth Circuit relied on this distinction when denying Lenning the broader protections provided by CGL policies. *Id.* at 584.

Cincinnati's accident argument, however, is related to the meaning of "occurrence." The Policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." At oral arguments, Cincinnati cited *Hawkeye-Security Insurance Co. v. Vector Construction Co.*, 185 Mich. App. 369, 460 N.W.2d 329 (1990), for the proposition that there is not an occurrence under the Policy if the defective work is the work of the insured. Cincinnati argued that *Cincinnati Insurance Co. v. Beazer Homes Investments, LLC*, 594 F.3d 441 (6th Cir. 2010), supports this proposition by pointing to other available avenues to cover this particular loss, such as performance bonds, errors and omissions policies, and subcontractor-default insurance. Houseman responded that *Capitol Reproduction, Inc. v. Hartford Insurance Co.*, 800 F.2d 617 (6th Cir. 1986), and *Amerisure Mutual Insurance Co. v. Hall Steel Co.*,

4

No. 286677, 2009 WL 4724303 (Mich. Ct. App. Dec. 10, 2009), support the Court's prior finding of an occurrence under the Policy.

In *Vector*, an insured sought coverage for the costs of replacing the insured's own work product, a defective concrete roof. *Vector*, 185 Mich. App. 371-72, 460 N.W.2d at 331. The court held that defective workmanship, by itself, does not constitute an "occurrence" under a standard CGL policy because the damage caused by the deficient workmanship was neither unexpected nor fortuitous. *Id.* at 378, 460 N.W.2d at 334. In reaching this conclusion, the *Vector* court distinguished the scenario in which an insured seeks coverage for its own defective work product from those cases finding an occurrence wherein the insured's faulty work caused damage to property other than the work of the insured. *Id.* at 377, 460 N.W.2d at 333.

Other courts have adopted this analytical dichotomy when determining whether there was an occurrence to trigger coverage.[3] In *Amerisure Mutual Insurance Co. v. Hall Steel Co.*, No. 286677, 2009 WL 4724303 (Mich. Ct. App. Dec. 10, 2009), an insured sought coverage under a standard CGL policy for damages arising out of a third party's use of the insured's defective steel to make steel brackets. *Hall Steel*, 2009 WL 4724303 at *1. The court held that there was an occurrence within the policy because the insured's defective product damaged the property of others. *See id.* at *2 (citing *Calvert Ins. Co. v. Herbert Roofing & Installation Co.*, 807 F. Supp. 435, 438 (E.D. Mich. 1992) (stating that "when an insured's defective workmanship results in damage to the property of others, an 'accident' exists within the meaning of the standard comprehensive liability policy.")).

---

[3]In *Cincinnati Insurance Co. v. Beazer Homes Investments, LLC*, 594 F.3d 441 (6th Cir. 2010), an insured sought coverage for the costs of repairing properly constructed components of several houses that had been damaged by the defective construction of other components. *Beazer Homes*, 594 F.3d at 444. In *dicta*, the Sixth Circuit affirmed the district court's conclusion that there was not an occurrence under Indiana law because "the natural consequences of intentional acts are not accidents." *Id.* at 452.

Similarly, in *Capitol Reproduction, Inc. v. Hartford Insurance Co.*, 800 F.2d 617 (6th Cir. 1986), an engineering company installed sewer lines based on the insured's faulty aerial survey of the property. *Capitol Reprod.*, 800 F.2d at 618-19. The insured sought coverage under its umbrella policy for the costs of additional fill dirt, the loss of aesthetic value due to the increased visibility of a main thoroughfare, and the decreased value of the subdivision lots, but not the costs of correcting the aerial survey. *Id.* at 619, 623. The Sixth Circuit examined the Michigan Supreme Court's definition of "accident" as something that "is not anticipated and is unforeseen and unexpected by the person injured or affected thereby." *Id.* at 622 (citations omitted). Ultimately, the court held that there was an occurrence under the policy and that there was coverage for damages to other property arising from the use of the defective aerial survey. *Id.* at 622-24.

Here, this Court's July 14, 2009, Order was too broad to the extent that the Court held all damages alleged by Houseman constituted an "occurrence" under the Policy. Pursuant to *Vector* and *Hall Steel*, this Court finds that the cost of repairing and replacing the store's floor is not covered under the Policy because the sinking floor was a result of defective workmanship, and consequently is not an "occurrence" under the Policy.

**Property Damage and Occurrence to Other Matters: Loss of Use**

Subsequent cases have expanded on *Vector*'s holding. In *Underwriters at Interest v. SCI Steelcon*, 905 F. Supp. 441 (W.D. Mich. 1995), a coverage case arising from the defective construction of an airplane hanger, the court distinguished instances where an insured's defective workmanship causes damage only to the insured's work product from situations where the defective workmanship unexpectedly causes damage to other property. 905 F. Supp. at 446. The court in *Steelcon* stated that in this latter situation, where the defective workmanship causes damage to property other than the insured's work product, an "accident" exists within the meaning of the

6

policy. *Id.* After noting that the policy's definition of "property damage" included "loss of use," the court held that the loss of use of the structure was property damage under the policy that resulted from an occurrence. *Id.*

Similarly, in *Radenbaugh v. Farm Bureau General Insurance Co.*, 240 Mich. App. 134, 610 N.W.2d 272 (2000), the court distinguished the damage to the insured's own work product from damage the defective workmanship caused to other property. 240 Mich App. at 148 (citing *Calvert Ins. Co. v. Herbert Roofing & Insulation Co.*, 807 F. Supp. 435 (E.D. Mich. 1992). The court there held that damage to property other than the insured's specific work product constituted an "accident," and therefore the complaint alleged an "occurrence" under the policy.

Therefore, as discussed above, under *Vector* the costs of the concrete and sub-floor support pilings are not covered under the CGL policy at issue because the sinking floor was a result of defective workmanship, and consequently not an "occurrence" under the policy. However, any other damage, including, but not limited to, loss of use to the store or damage to other parts of the structure is "property damage" and an "accident," and thus constitutes an "occurrence" under the Policy. Accordingly, the Court will vacate in part its July 14, 2009, Order interpreting "occurrence" in the Policy and hold that there is an "occurrence" to the extent that Houseman can prove damages to property other than the store's floor.

**Houseman's Motion for Summary Judgment**

Houseman's motion for summary judgment concerns the applicability of the "Your Work" exclusion. In section 2(l), the Policy excludes coverage for "'Property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" (Def.'s Ex. 4, Part 1, at 8-9.) However, there is an exception to this exclusion. Section 2(l) provides that "This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (*Id.* at 9.)

In the July 14, 2009, Order, the Court held that there was an issue of fact regarding whether the floor work was performed by subcontractors. Presently, Houseman argues that it is entitled to summary judgment because there is undisputed evidence that Houseman's subcontractors caused the damages to the store's floor. Cincinnati cites the deposition testimony of David Sabota, the principal of DTS Architects, to support its argument that there is an issue of fact regarding whether Houseman shared a soils report with the subcontractors.

The purpose of the subcontractor exception to the "Your Work" exclusion is to provide coverage for the insured where the insured hires a separate entity to perform part of a larger project. Implicit in this general contractor / subcontractor relationship is the notion that the general contractor will provide all relevant information to the subcontractor so that the subcontractor can independently assess the situation and determine the best approach for construction. Any contrary conclusion would turn the subcontractor's independent work into the general contractor's own work, thereby placing the subcontractor's performance squarely within the "Your Work" exclusion rather than the subcontractor exception.

Here, Cincinnati does raise an issue of fact regarding whether Houseman shared the soils report with the subcontractors. Therefore, Houseman's motion for summary judgment will be denied.

An Order consistent with this Opinion will be entered.


Dated: April 23, 2010                                    /s/ Gordon J. Quist
                                                      GORDON J. QUIST
                                                 UNITED STATES DISTRICT JUDGE